IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ALLIANCE OF NONPROFITS FOR INSURANCE, <br><br> Plaintiff, <br> v. <br><br> LIVES UNDER CONSTRUCTION RANCH, INC. d/b/a LIVES UNDER CONSTRUCTION BOYS RANCH, a South Dakota Nonprofit Corporation, and JOHN DOE VII, an individual. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:25-cv-05096 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, ALLIANCE OF NONPROFITS FOR INSURANCE ("ANI"), by its undersigned counsel, and for its Complaint for Declaratory Judgment against Defendants, LIVES UNDER CONSTRUCTION RANCH, INC. d/b/a LIVES UNDER CONSTRUCTION BOYS RANCH ("LUC") and JOHN DOE VII ("Doe"), states as follows:

### NATURE OF THE ACTION

1. In this action, ANI seeks a determination of its rights and obligations under insurance policies issued to Defendant LUC in connection with a lawsuit filed by Doe, which asserts claims against LUC.

2. The Underlying Action is pending in the Circuit Court for the 39th Judicial Circuit, Stone County, Missouri.

3. ANI issued consecutive primary and umbrella policies to LUC, as described more fully below.

4. Defendant LUC failed to provide timely notice of the underlying lawsuit under the subject policies and failed to cooperate with ANI-appointed defense counsel, resulting in a default judgment being entered against LUC.

5. For the reasons discussed herein, ANI has no obligation to defend or indemnify LUC with respect to the default judgment.

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

7. Plaintiff ANI is a Vermont nonprofit organization with a home office in Vermont and a main administrative office in Santa Cruz, California. At all relevant times, ANI conducted business in the State of Missouri.

8. Defendant LUC is a nonprofit organization organized under the laws of the State of South Dakota with its principal place of business in Lampe, Missouri.

9. Defendant Doe is a resident of Stone County, Missouri and a citizen of the State of Missouri. Plaintiff ANI does not assert any claims against Defendant Doe in the Complaint and Doe has been named as a defendant in this action solely as a necessary and indispensable party.

10. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff ANI, on the one hand, and Defendants LUC and Doe, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying LUC with regard to the Underlying Action, exceeds $75,000, exclusive of interest and costs.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Underlying Action occurred in this District.

12. An actual, justiciable controversy exists between ANI, on the one hand, and LUC and Doe, on the other hand, and by the terms provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

13. On October 30, 2024, Defendant John Doe VII ("Doe") filed a lawsuit against LUC in the in the Circuit Court for the 39th Judicial Circuit, Stone County, Missouri, styled *John Doe VII v. Lives Under Construction Boys Ranch, Inc.*, Case No. 24SN-CC00364 (the "Underlying Action").

14. Doe also filed a Motion for Identity Protective Order, in which Doe sought leave to filed the Underlying Action as "John Doe VII," which motion was granted on November 1, 2024. A true and correct copy of the Motion for Identity Protective Order is attached hereto as **Exhibit A**. A true and correct copy of the Identity Protective Order is attached as **Exhibit B**.

15. The petition filed in the Underlying Action (the "Petition") alleges that LUC assumes custodial care of boys spanning a range of ages and provides facilities and staff to provide such services. See **Exhibit C** attached hereto, a true and correct copy of the Petition, at ¶ 3.

16. The Petition alleges that Doe was 15 years old when he arrived at LUC and was a resident of LUC from approximately August 2015 through May 2018. *Id*. at ¶¶ 7-8.

17. The Petition alleges that LUC was contracted by Doe's parents to provide for Doe's care, custody, supervision, and safety while he was a resident of LUC. *Id*. at ¶ 7.

18. The Petition alleges that while a resident of LUC, Doe was physically and sexually assaulted, sexually molested, and sexually abused by another resident of LUC. *Id*. at ¶ 9.

19. The Petition alleges that since at least 2002, there were multiple acts of sexual

3

assault perpetrated by residents of LUC against one another that were known by the administration and other LUC staff and, as to one alleged former resident, were made known to and investigated by state regulatory authorities. *Id*. at ¶ 10.

20. The Petition alleges that during the relevant time period, LUC, through its employees, was aware of the multiple and ongoing instances of physical and sexual assaults of minor residents but took no reasonable actions to stop it or otherwise implement safeguards to protect residents at LUC facilities, including Doe. *Id*. at ¶ 12.

21. The Petition alleges that during the relevant time period, LUC was cited by the Missouri Department of Social Services for failure to report instances of sexual abuse and contact occurring between LUC residents, for being aware of sexual contact between LUC residents but taking no corrective action to resolve the issues, and for failure to have supervisory staff on duty in the LUC dormitory with the residents during nighttime hours. *Id*. at ¶ 13.

22. The Petition alleges that by the time Doe arrived at LUC in 2015, a culture of pervasive physical and sexual assaults existed at LUC as a result of the ongoing failure by staff and management to take any meaningful actions to protect residents from such assaults, and a culture of secrecy as a result of LUC's alleged custom and practice of failing to report instances of sexual assault and punishing victims in an effort to intimidate and silence them. *Id*. at ¶ 13.

23. The Petition alleges that prior to the incidents involving Doe, another resident at LUC, identified in the Petition as "John Doe 1" ("Doe I"), was the victim of multiple sexual assaults by 19-year old resident Noel Nickel ("Nickel"), who in February 2010 was convicted of statutory sodomy committed upon Doe I, while both were residents of LUC. *Id*. at ¶ 15.

24. The Petition alleges that prior to Nickel's sexual assault of Doe I, the staff and administration of LUC knew he posed a risk of inflicting sexual harm on young boys yet failed to

take any precautions to separate older residents from younger residents. *Id.* at ¶¶ 16, 24.

25. The Petition alleges that, instead of reporting the criminal sexual assaults perpetrated against Doe I, LUC punished Doe I as part of its custom and practice of attempting to intimidate and silence victims of sexual assault. *Id.* at ¶ 18.

26. The Petition alleges that in December 2009, following the assault of Doe I, LUC retained the services of a psychology consultant who provided four recommendations for increased prevention and security. *Id.* at ¶ 19.

27. The Petition alleges that while LUC's board adopted the recommended policies, board members failed to enforce the policies, despite knowing that LUC administration and other LUC employees had failed to implement them. *Id.* at ¶ 20.

28. The Petition alleges that following the sexual assault of Doe I, other residents, identified in the Petition as "John Doe II," "John Doe III," "John Doe IV," and "John Doe V," were repeatedly raped and/or sexual assaulted, abused, and molested by numerous LUC residents who were known by LUC employees and the administration to be sexual predators or to have a history of inappropriate sexual conduct. *Id.* at ¶ 22.

29. The Petition alleges that in each instance, LUC employees and administration failed to provide appropriate medical and psychiatric care to the victims and punished the victims rather than reporting the incidents to appropriate authorities in Missouri. *Id.* at ¶ 23.

30. The Petition alleges these actions were intended to silence and intimidate sexual assault victims and to prevent knowledge of such assaults by the public and LUC's financial supporters. *Id.* at ¶ 23.

31. The Petition alleges that the perpetrator (the "Assailant") of the physical and sexual assaults against Defendant Doe was well-known among LUC administration and staff as a

5

perpetrator of physical and sexual assault. *Id*. at ¶ 24.

32. The Petition alleges that LUC did nothing to protect Doe from the Assailant and, instead, placed Doe in the same dormitory with the Assailant and punished Doe when he reported the abuses, including by forcing Doe to perform labor alongside the Assailant. *Id*.

33. The Petition alleges that Defendant Doe was the victim of multiple incidents of physical and sexual assault over a four-to-five month time period from approximately January 2017 to May 2017. *Id*. at ¶ 26.

34. Count I of the Petition alleges that LUC negligently breached various duties to Doe, and that as a result of these negligent acts, Defendant Doe was physically and sexually abused, sexually molested, sexually assaulted, and/or physically assaulted by another resident of LUC, and suffered permanent and ongoing emotional and psychological trauma. *Id*., Count I, ¶¶ 2-4.

35. Count II of the Petition alleges that the same negligent acts of LUC described in Count I resulted in Doe sustaining medically diagnosable and significant emotional distress. *Id*., Count II, ¶¶ 2-4.

36. Through his Petition, Doe seeks an award of damages in an amount to be determined by the jury, costs, and other relief deemed appropriate by the court.

## STATUS OF THE UNDERLYING ACTION AND NOTICE TO ANI

37. LUC was served with the Petition on October 31, 2024. A true and correct copy of the proof of service on LUC is attached hereto as **Exhibit D**.

38. On December 5, 2024, Plaintiff Doe filed a motion for interlocutory order of default against LUC for its failure to file a responsive pleading to the Petition. A true and correct copy of the motion for interlocutory order of default is attached hereto as **Exhibit E.**

39. LUC first provided notice of the Underlying Action to ANI on January 15, 2025,

more than two months after the Petition was served and more than a month after the motion for default was filed.

40. ANI appointed Beth Boggs ("Boggs") as defense counsel the following day, on January 16, 2025.

41. Boggs attempted to contact LUC through its representative, Kent Ortman ("Ortman"), regarding the representation.

42. In a February 20, 2025 affidavit, Ortman stated that when Boggs contacted him regarding the Underlying Action, he "disregarded her because [he] did not recall her name or her firm." See **Exhibit F** attached hereto, a true and correct copy of the Ortman affidavit, at ¶ 12.

43. On January 22, 2025, the Court in the Underlying Action entered an interlocutory order of default against LUC. A true and correct copy of the interlocutory order of default is attached hereto as **Exhibit G.**

44. On February 7, 2025, the Court entered a default judgment against LUC in the amount of $10 million. A true and correct copy of the judgment is attached hereto as **Exhibit H.**

45. Despite the untimely notice, ANI has funded efforts by defense counsel to set aside the default judgment.

46. LUC's motion to set aside the default judgment was denied on August 18, 2025. A true and correct copy of the order denying LUC's motion to set aside the default judgment is attached hereto as **Exhibit I**.

47. At ANI's expense, defense counsel for LUC filed a Notice of Appeal of the August 18, 2025 order, which remains pending as of the date of this filing. A true and correct copy of the Notice of Appeal is attached hereto as **Exhibit J**.

7

## THE PRIMARY POLICIES

48. ANI issued commercial lines policy number 2016-42823 to LUC for the policy period of April 1, 2016 through April 1, 2017 (the "16-17 Primary Policy"). A true and correct copy of the 16-17 Primary Policy is attached hereto as **Exhibit K**.[1]

49. ANI issued commercial lines policy number 2017-42823 to LUC for the policy period of April 1, 2017 through April 1, 2018 (the "17-18 Primary Policy") (collectively with the 16-17 Primary Policy, the "Primary Policies"). A true and correct copy of the 17-18 Primary Policy is attached hereto as **Exhibit L.**

50. The Primary Policies' Commercial General Liability Coverage Part is subject to an endorsement titled, "Improper Sexual Conduct and Physical Abuse Exclusion," which provides in relevant part as follows:

> The insurance provided by this policy affords NO COVERAGE with respect to any claim, suit or cause of action which arises from, or is in any way related to:
>
> A. Any form of improper sexual conduct (including but not limited to sexual abuse, sexual molestation, sexual harassment, sexual assault, sexual battery, sexual exploitation or sexual injury), whether actual or threatened or physical abuse, (including but not limited to assault, including assault with a deadly weapon or with force likely to produce bodily harm, battery, or unreasonable physical restraint or constraint), committed or allegedly committed by any Named Insured, insured or:
>
>   1. any Alliance of Nonprofits for Insurance member;
>   2. any employee or volunteer of any Alliance of Nonprofits for Insurance member;
>   3. any other person performing services for or on behalf of any Alliance of Nonprofits for Insurance member;
>   4. any client, participant, service recipient, student or patient of any Alliance of Nonprofits for Insurance member; or
>   5. any person relating to or in any way interacting with any Alliance of Nonprofits for Insurance member; or

---

[1] For ease of reference, each of the ANI policies attached hereto bear sequentially Bates-labeled page numbers at the bottom right-hand corner of each page that begin with the prefix ANI.

B. Employment practices concerning a person who commits or allegedly commits any of the acts cited in paragraph A above, including but not limited to hiring, reference checks, background investigation, improper or inadequate supervision or failure to suspend, discipline or terminate;

C. Failure to report an incident of any form of improper sexual conduct or physical abuse to the proper authorities, or the withholding of pertinent information concerning same from such authorities.

This exclusion shall apply regardless of the legal form ANY claim or complaint may take, and shall apply to each and every cause of action and allegation contained in a claim or complaint if ANY cause of action or allegation in that claim or complaint in ANY manner sets forth an allegation of ANY form of improper sexual conduct or physical abuse. For example, if a claim is made or a complaint is filed against an individual or entity referred to in paragraph A above, there is NO COVERAGE for ANY individual or entity under the policy, regardless of ANY other coverage provisions that might otherwise apply.

See Ex. K at ANI 0055-56; Ex. L at ANI 0240-241.

51. The Primary Policies include, in relevant part, an Improper Sexual Conduct and Physical Abuse Liability ("ISCPA") coverage part, which provides liability limits of $1 million for each claim and a $1 million general aggregate, eroded by the payment of claims expenses paid by ANI. Ex. K at ANI 0094-101; Ex. L at ANI 0278-285.

52. The Primary Policies' ISCPA coverage part contains the following provisions, in relevant part:

**SECTION I – COVERAGES**

"BODILY INJURY" ARISING FROM "IMPROPER SEXUAL CONDUCT" OR "PHYSICAL ABUSE"

1. Insuring Agreement.

   a. We will pay those sums that an insured becomes legally obligated to pay as "damages" because of "bodily injury" arising from "improper sexual conduct" or "physical abuse." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III - OTHER PAYMENTS. SECTION V - LIMITS OF INSURANCE include sums paid for "damages" and other payments. The "improper sexual conduct" or "physical abuse" must take place in the

9

"coverage territory" during the effective dates of the policy period. We will have the right and duty to defend any "suit" seeking such "damages. . . .

\* \* \*

b. All "claims" or "suits" for "damages" because of "bodily injury" arising from a single act or a series of continuous or repeated acts of "improper sexual conduct" or "physical abuse" to the same person, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from "bodily injury" arising from "improper sexual conduct" or "physical abuse", will be considered as having resulted from the same "improper sexual conduct" or "physical abuse" which shall be deemed to have been committed on the date of the first such act. The date of the first such act of "improper sexual conduct" or "physical abuse" must take place during the effective dates of this policy period.

Ex. K at ANI 0094-95; Ex. L at ANI 0278-279.

53. The ISCPA coverage part contains, in relevant part, the following provisions:

**SECTION II - EXCLUSIONS**

\* \* \*

6. This insurance does not apply to "bodily injury" arising from "improper sexual conduct" or "physical abuse" which takes place prior to or after the effective dates of this policy period.

\* \* \*

Ex. K at ANI 0094-95; Ex. L at ANI 0278-279.

**SECTION III – OTHER PAYMENTS**

THESE PAYMENTS WILL REDUCE THE LIMITS OF INSURANCE.

We will pay, with respect to any "claim" or "suit" we defend:

1. All expenses we incur, including but not limited to, reasonable and customary attorney fees, costs and disbursements.

\* \* \*

Ex. K at ANI 0096; Ex. L at ANI 0280.

**SECTION VI – IMPROPER SEXUAL CONDUCT AND PHYSICAL ABUSE LIABILITY CONDITIONS**

10

* * *

2. Your Duties.

   a. You must see to it that we are notified as soon as practicable if you become aware of any "improper sexual conduct" or "physical abuse" which may result in a "claim." To the extent possible, notice should include:
      (1) How, when and where the "improper sexual conduct" or "physical abuse" took place;

      (2) The names and addresses of any injured persons and witnesses;

      (3) The nature and location of any "bodily injury" arising from the "improper sexual conduct" or "physical abuse".

   b. If a "claim" is received by any insured you must:

      (1) Immediately record the specifics of the "claim" and the date received;

      (2) Notify us as soon as practicable. You must see to it that we receive written notice of the "claim" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit"; and

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to an insured because of "damages" to which this insurance may apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for medical first aid, without our prior written consent.

* * *

Ex. K at ANI 0097-98; Ex. L at ANI 0281-282.

11

**SECTION VII – DEFINITIONS**

1. "Bodily injury" means bodily injury, sickness or disease including emotional distress or anguish sustained by a person, "Bodily injury" includes death resulting from "improper sexual conduct" or "physical abuse".

2. "Claim" or "claims" means any demand or "suit" against any insured which seeks "damages" for "bodily injury" arising from "improper sexual conduct" or "physical abuse". It is understood that the "claim" or "claims" must result from "improper sexual conduct" or "physical abuse" that takes place during the effective dates of the policy period.

   \*   \*   \*

4. "Damages" means the monetary portion of any judgment, award or settlement to which we have consented, but does not include:

   a. Civil or criminal fines, sanctions or penalties;

   b. Punitive or exemplary damages;

   c. The multiplied portion of multiplied damages;

   d. Any amount uninsurable under the law pursuant to which this coverage shall be construed; or

   e. Costs of complying with equitable relief, including but not limited to, injunctions, restraining orders or restitution.

5. "Improper sexual conduct" means actual, attempted, or alleged unlawful sexual conduct by one person or two or more persons acting in concert as prohibited by federal or state law, including but not limited to sexual abuse, sexual molestation, sexual harassment, sexual assault, sexual battery, sexual exploitation or sexual injury.

   \*   \*   \*

7. "Physical abuse" means any form of physical abuse, including but not limited to any act of actual or threatened assault, including assault with a deadly weapon or force likely to produce bodily harm, battery, unreasonable physical restraint or constraint.

   \*   \*   \*

9. "Suit" means a civil proceeding, including any appeal therefrom, in which "damages" because of "bodily injury" arising from "improper sexual conduct"

or "physical abuse" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such "damages" to which you must submit or submit with consent. "Suit" does not include any criminal action or proceeding.

Ex. K at ANI 0100-101; Ex. L at ANI 0284-285.

## THE UMBRELLA POLICIES

54. ANI issued commercial umbrella policy number 2016-42823-UMB to LUC for the policy period of April 1, 2016 through April 1, 2017 (the "16-17 Umbrella Policy"). A true and correct copy of the 16-17 Umbrella Policy is attached hereto as **Exhibit M.**

55. The 16-17 Umbrella Policy provides liability limits of $4 million per occurrence and in the aggregate for Improper Sexual Conduct Liability. Ex. M at ANI 0376.

56. The 16-17 Umbrella Policy follows form with the 16-17 Primary Policy. Ex. M at ANI 0379.

57. ANI issued commercial umbrella policy number 2017-42823 to LUC for the policy period of April 1, 2017 through April 1, 2018 (the "17-18 Umbrella Policy") (collectively with the 16-17 Umbrella Policy, the "Umbrella Policies"). A true and correct copy of the 17-18 Umbrella Policy is attached hereto as **Exhibit N.**

58. The 17-18 Umbrella Policy provides liability limits of $4 million per occurrence and in the aggregate for Improper Sexual Conduct Liability. Ex. N at ANI 0393.

59. The 17-18 Umbrella Policy follows form with the 17-18 Primary Policy. Ex. N at ANI 0396.

60. Defendant LUC has sought a defense and indemnity from ANI under the Primary and Umbrella Policies (collectively, the "Policies") in connection with the claims asserted against it in the Underlying Action.

## COUNT I
### Declaratory Judgment
### No Duty to Defend

61. ANI incorporates by reference herein paragraphs 1 through 60 as if the same were fully set forth at length.

62. LUC was served with the Petition in the Underlying Action on October 31, 2024. Ex. D.

63. On December 5, 2024, Plaintiff Doe filed a motion for interlocutory order of default against LUC for its failure to file a responsive pleading to the Petition. Ex. E.

64. LUC failed to provide notice to ANI of the Underlying Action or the motion for default until January 15, 2025.

65. The next day, ANI appointed attorney Boggs to defend LUC.

66. Boggs attempted to contact LUC through its principal, Ortman, but LUC was nonresponsive.

67. In a February 20, 2025 sworn affidavit, Ortman stated that when Boggs contacted him regarding the Underlying Action, he "disregarded her because [he] did not recall her name or her firm," despite the fact that Boggs and her firm had represented LUC in prior matters. Ex. F, ¶ 12.

68. On January 22, 2025, before LUC responded to Boggs, the Court in the Underlying Action entered an interlocutory order of default against LUC. Ex. G.

69. On February 7, 2025, the Court entered a default judgment against LUC in the amount of $10 million. Ex. H.

70. Despite LUC's late notice, ANI continued to provide counsel to LUC in an attempt to set aside the default judgment, including funding an ongoing appeal.

71. In the event of a "claim," LUC was required to notify ANI as soon as practicable and "[i]mmediately send [ANI] copies of any demands, notices, summons or legal papers received in connection with the 'claim' or 'suit.'" Ex. K at ANI 0097-98; Ex. L at ANI 0281-282

72. LUC was further required to cooperate with ANI in the investigation, settlement or defense of the Underlying Lawsuit. *Id.*

73. As a result of LUC's late notice to ANI and failure to cooperate with Boggs, ANI has sustained prejudice by being deprived of its right to defend LUC against the merits of the Underlying Action.

74. ANI therefore owes no duty under the Policies to defend LUC in connection with the Underlying Action.

WHEREFORE, ANI seeks declaratory judgment in its favor finding that it owes no duty under the Policies to defend LUC in connection with the Underlying Action.

## COUNT I
### Declaratory Judgment
### No Duty to Defend

75. ANI incorporates by reference herein paragraphs 1 through 60 as if the same were fully set forth at length.

76. LUC was served with the Petition in the Underlying Action on October 31, 2024. Ex. D.

77. On December 5, 2024, Plaintiff Doe filed a motion for interlocutory order of default against LUC for its failure to file a responsive pleading to the Petition. Ex. E.

78. LUC failed to provide notice to ANI of the Underlying Action or the motion for default until January 15, 2025.

79. The next day, ANI appointed attorney Boggs to defend LUC.

80. Boggs attempted to contact LUC through its principal, Ortman, but LUC was nonresponsive.

81. In a February 20, 2025 sworn affidavit, Ortman stated that when Boggs contacted him regarding the Underlying Action, he "disregarded her because [he] did not recall her name or her firm," despite the fact that Boggs and her firm had represented LUC in prior matters. Ex. F, ¶ 12.

82. On January 22, 2025, before LUC responded to Boggs, the Court in the Underlying Action entered an interlocutory order of default against LUC. Ex. G.

83. On February 7, 2025, the Court entered a default judgment against LUC in the amount of $10 million. Ex. H.

84. Despite LUC's late notice, ANI continued to provide counsel to LUC in an attempt to set aside the default judgment, including funding an ongoing appeal.

85. In the event of a "claim," LUC was required to notify ANI as soon as practicable and "[i]mmediately send [ANI] copies of any demands, notices, summons or legal papers received in connection with the 'claim' or 'suit.'" Ex. K at ANI 0097-98; Ex. L at ANI 0281-282.

86. LUC was further required to cooperate with ANI in the investigation, settlement or defense of the Underlying Lawsuit. *Id.*

87. As a result of LUC's late notice to ANI and failure to cooperate with Boggs, ANI has sustained prejudice by being deprived of its right to defend LUC against the merits of the Underlying Action.

88. ANI therefore owes no duty under the Policies to indemnify LUC in connection with the default judgment.

16

WHEREFORE, ANI seeks declaratory judgment in its favor finding that it owes no duty under the Policies to indemnify LUC in connection with the default judgment.

## COUNT II
### Declaratory Judgment
### 16-17 Policies Are the Only Potentially Implicated Policies

89. ANI incorporates by reference herein paragraphs 1 through 60 as if the same were fully set forth at length.

90. The ISCPA coverage part is the only potentially implicated coverage part, as the Underlying Action alleges "improper sexual conduct," as defined in the Primary Policies.

91. The ISCPA insuring agreement in both Primary Policies states that ANI will pay those sums that an insured becomes legally obligated to pay as "damages" because of "bodily injury" arising from "improper sexual conduct" that takes place during the effective dates of the policy period. Ex. K at ANI 0094-95; Ex. L at ANI 0278-279

92. The ISCPA insuring agreement in both Primary Policies states that all "claims" or "suits" for "damages" because of "bodily injury" arising from a single act or a series of continuous or repeated acts of "improper sexual conduct" or "physical abuse" to the same person, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from "bodily injury" arising from "improper sexual conduct" or "physical abuse", will be considered as having resulted from the same "improper sexual conduct" or "physical abuse" which shall be deemed to have been committed on the date of the first such act. The date of the first such act of "improper sexual conduct" or "physical abuse" must take place during the effective dates of this policy period. Ex. K, at ANI 0095; Ex. L, at ANI 0279.

93. The Petition alleges "improper sexual conduct" against Doe between January 2017 and May 2017. Ex. C, ¶ 26.

94. All "improper sexual conduct" alleged in the Petition to have caused "bodily injury" to Doe is therefore deemed to have been committed on the date of the first such act, in January 2017.

95. To the extent ANI owes any coverage obligations in connection with the Underlying Actions, the 16-17 Policies are thus the only implicated policies issued by ANI.

WHEREFORE, ANI seeks declaratory judgment in its favor finding that to the extent ANI owes any coverage obligations in connection with the Underlying Action, the 16-17 Policies are the only implicated policies.

## PRAYER FOR RELIEF

Plaintiff, Alliance of Nonprofits for Insurance, hereby respectfully request the entry of an order and judgment in its favor and against Lives Under Construction Ranch, Inc. d/b/a Lives Under Construction Boys Ranch and John Doe VII , declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. ANI does not owe a duty under the Policies to defend LUC in connection with the Underlying Action;

c. ANI does not owe a duty under the Policies to indemnify LUC in connection with the default judgment entered against LUC;

d. To the extent ANI owes any coverage obligations in connection with the Underlying Action, the 16-17 Policies are the only implicated policies;

e. ANI is entitled to an award of its costs; and

f. for any further orders and relief as this Court deems just and appropriate.

Dated: November 18, 2025          Respectfully Submitted,

                                  By:   */s/ Philip C. Graham*
                                        Philip C. Graham, #40345MO
                                        Adrianna J. Northrop, #76840MO
                                        SANDBERG PHOENIX & VON GONTARD, P.C.
                                        701 Market St., Ste. 600
                                        St. Louis, MO 63101
                                        Phone: (314) 231-3332
                                        Fax: (314) 241-7604
                                        pgraham@sandbergphoenix.com
                                        anorthrop@sandbergphoenix.com

                                        *Attorneys for Alliance of Nonprofits for Insurance*